IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LEVAR PAYTON, #411-397                *

Plaintiff                            *

v                                    *    Civil Action No. ELH-16-572

WARDEN FRANK B. BISHOP, JR.           *

Defendant                            *
                                     ***

## MEMORANDUM

Levar Payton, a Maryland Division of Correction ("DOC") prisoner housed at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, filed a civil rights actions under 42 U.S.C. § 1983 against Warden Frank B. Bishop, Jr.   Bishop has filed an unopposed dispositive motion (ECF 8), supported by a memorandum (ECF 8-1) (collectively, the "Motion") and exhibits.[1]   No hearing is necessary to resolve the motions. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, defendant's Motion, construed as a motion for summary judgment, shall be granted.

### I.    The Factual Allegations

#### A.  Plaintiff

Payton provides little factual detail in his Complaint.  He states generally that he has been denied the opportunity to participate in a religious group, that he has been denied medication for hypertension, and that for two years he has been denied his "meal preference" and is not

---

[1] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Clerk  informed Payton on June 2, 2016, that defendant had filed a dispositive  motion;  that Payton had seventeen days in which to file an opposition to the motion; and that if Payton failed to respond, his case could be dismissed and judgment could be entered against him without further notice. ECF 9.  Payton has not responded.

provided with dessert.  ECF 1 at 2.[2]  He claims that defendant, Warden Bishop, has failed to respond to his requests to remedy these issues, and seeks damages and injunctive relief mandating his release from solitary confinement and incarceration.  *Id.*

## B. Defendant

Defendant has submitted a legal memorandum and exhibits, from which the following is gleaned.  Payton is housed in the disciplinary segregation unit at NBCI.[3] ECF 8-2 (Bishop Decl.) at ¶ 11. His religious preference is listed as Shi'a Islam.  ECF 8-4 (Lamp Decl.) at ¶ 7.

To receive a religious diet, Payton – like all prisoners – must fill out a religious diet application form. *Id.* at ¶ 4. This policy helps ensure that the prisoner is seeking the religious dietary plan for sincerely held religious reasons. *Id.* Plaintiff has not submitted a request for a religious dietary plan. *Id.* at ¶ 5.

Division of Correction policy categorically forbids disciplinary segregation prisoners from attending any congregate religious services.  ECF 8-5 at 5, DCD 110-6 (VI)(O).[4]  Payton may request access to a chaplain and may worship in his cell. *Id.* Furthermore, Chaplain Kevin Lamp is available to accommodate disciplinary segregation prisoners of all faiths by providing access to religious literature and materials, volunteer clergy of their faith, religious forms/paperwork, and holy day feasts.  ECF 8-4 (Lamp Decl.) at ¶ 7.

---

[2] Page references are to those reflected in the court's electronic case filing system.

[3] From prior litigation, the undersigned is aware that Payton has been housed on disciplinary segregation since January 28, 2014. *See Payton v. Bishop,* ELH-15-3648, ECF 13-7, Rounds Decl. at ¶ 4; ECF 13-8, Gursky Decl. at ¶ 4.

[4] NBCI's Institutional Directive that implements DCD 110-6 establishes that segregation inmates are not permitted to attend group worship services due to security concerns.  ECF 8-6, NBCI.ID.110.0006.1.05.A(12).

Payton does not allege that his meals violate his religious practice, are nutritionally inadequate, that he is not being served meals, or that he is required to have a medical diet; Rather, he alleges that the meals served to him are not his preference and do not contain dessert.  ECF 1 at 2.  This allegation states no cognizable claim.

Payton did not submit any of his complaints to the appropriate NBCI personnel by filing an Administrative Remedy Procedure ("ARP") grievance.  Instead, on February 22, 2016, Payton filed a grievance raising his concerns about his religious rights directly with the Inmate Grievance Office ("IGO").  ECF 8-7 (Neverdon Decl. and attached IGO appeal).  The IGO dismissed this grievance on April 18, 2016, concluding that Payton failed to demonstrate that he properly pursued the ARP process before filing with the IGO, as he was required to due under COMAR 12.07.01.04(B)(9)(a) and COMAR 12.07.01.06(B)(4).  ECF 8-7 at 5-6.

## II. Standard of Review

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. ECF 8. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When, as here, the movant expressly captions its motion "in the alternative," as one to

dismiss or for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[5]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see Putney*

---

[5] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

*v. Likin*, __ Fed. Appx. __, 2016 WL 3755783, at *4 (4th Cir. July 14, 2016). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit …is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not

always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted); *see also Putney*, 2016 WL 3755783, at *5; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary," and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods,* 302 F.3d at 244-45 (internal citations omitted). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 2016 WL 3755783, at *5.

Payton has not filed an affidavit under Rule 56(d).  Indeed, he has failed to respond to the Motion, even when informed of the consequences for failing to do so. In light of the foregoing, I am satisfied that it is appropriate to address the defense motions as ones for summary judgment, as this will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club,*

*Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### III. Discussion

In Maryland, prisoner medical treatment is provided through a contractual arrangement with an outside vendor not part of State government.  Thus, ARP exhaustion is not required before bringing a claim for denial of medical care. *See Abramson v. Correctional Med. Servs., Inc.*, 359 Md. 238, 753 A.2d 501 (2000). Bishop argues that as a DOC employee, he cannot be held liable for Payton's claim that he has been denied blood pressure medication under the doctrine of *respondeat superior*, because he had no supervisory authority over the contractual health care providers.  Bishop also provides documentation showing that Payton in fact received that medication.  ECF 8-2 (Bishop Decl.) at ¶¶ 5-10; ECF 8-3 (Medical Records).

Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984)).  Supervisory liability under §1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the

knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).   Where, as here, the named defendant had no supervisory authority over the individual alleged to have caused the injury, it follows that he is not liable for such injury.

Defendant also argues, *inter alia*, that Payton's claims must be dismissed because he has failed to exhaust available administrative remedies, as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e(a).   The Prisoner Litigation Reform Act provides, in pertinent part:

> (a) Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of        this title, or any other Federal law, by a prisoner confined in any jail, prison, or  other correctional facility until such administrative remedies as are available are  exhausted.

42 U.S.C. § 1997e.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses all prisoner suits about prison life, "whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. App'x 253 (4th Cir. 2004).

The grievance process applies to a wide variety of claims that arise out of the conditions of confinement, even if the grievance process cannot provide a comprehensive remedy for such claims, such as tort claims of assault and battery against prison officers. *See McCullough v. Wittner*, 314 Md. 602, 552 A.2d 881 (1989). Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by a defendant. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008) (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F. Supp. 2d at 530; *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner=s claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024

(7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Ordinarily, a prisoner must follow the required procedural steps in order to exhaust his administrative remedies. *Moore,* 517 F.3d at 729; *see Langford v. Couch,* 50 F.Supp.2d 544, 548 (E.D. Va. 1999) ("[T]he PLRA amendment made clear that exhaustion is now mandatory."). But, the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

A prisoner need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross v. Blake*, ____ U.S. ____, 136 S. Ct. 1850 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Id.* at 1855. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id.* at 1856-57. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 1855.

The Fourth Circuit addressed the meaning of "available" remedies in *Moore v. Bennette, supra*, stating, 517 F.3d at 725:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

More recently, in *Ross*, the Supreme Court stated that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136

S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). Thus, an inmate must complete the prison's internal appeals process before bringing suit. *Chase v. Peay*, 286 F. Supp. 2d at 529-30.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and a prisoner's duty to exhaust available remedies "does not come into play." *Ross*, 136 S. Ct. at 1859. These are when the remedy operates as a "simple dead end-with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" the administrative scheme might be so "opaque" as to become "practically speaking, incapable of use;" and prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

None of these circumstances exists here.  Payton failed to file ARP complaints regarding most of his concerns or, as to his religious issues, improperly sought relief directly from the IGO and thereafter failed to follow the IGO's advice to first pursue that claim through the ARP process.

### IV. Conclusion

Payton does not dispute defendant's assertion that he did not properly complete exhaustion of administrative remedies with regard to the allegations set forth in the Complaint. There is no indication that the ARP process was unavailable to him. Thus, Payton's suit is subject to dismissal on this basis alone. Further, defendants' unopposed and verified submissions provide ample evidence that Payton's religious and dietary needs are being met, and he is receiving proper blood pressure medication.

Defendant's motion for summary judgment is granted. A separate Order follows.

Date: September 26, 2016          _____/s/_____
                                  Ellen L. Hollander
                                  United States District Judge